IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARC ELLIOT,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>HBO HOME ENTERTAINMENT CORP., a Delaware Corporation; JEHANE NOUJAIME, an individual; KARIM AMER, an individual; THE OTHRS, LLC, a Florida limited liability company; THE OTHRS LICENSING CORP., a Florida corporation; THE SQUARE, LLC, a New York limited liability company; ISABELLA CONSTANTINO, an individual; JOHN DOES 1–10,<br><br>　　　　　　Defendants. | Case No. 4:23-cv-01611-SEP |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF**
**MOTION TO DISMISS OR TRANSFER VENUE**

Defendants Home Box Office, Inc. ("HBO," incorrectly sued as "HBO Home Entertainment Corp."), Jehane Noujaim (incorrectly sued as "Jehane Noujaime"), Karim Amer, The Othrs Licensing Corp., The Othrs, LLC, The Square, LLC, and Isabella Constantino (collectively, "Defendants") respectfully submit this reply in further support of their motion to dismiss pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure or transfer venue pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

In their opening brief (Dkt. 31-1, "Br."), Defendants raised multiple, independently sufficient grounds for dismissal or transfer of this case.  Plaintiff Marc Elliot fails to effectively

rebut any of them in his response (Dkt. 34, "Resp."), which he belatedly filed two weeks after the deadline.[1]  Defendants' motion should be granted.

## ARGUMENT

### I. Mr. Elliot has not established personal jurisdiction over any Defendant.

As Defendants demonstrated in their opening brief, this Court lacks personal jurisdiction over them because they have no relevant connection with the State of Missouri.  *See* Br. at 4-11. In response, Mr. Elliot appears to contend that the Court has personal jurisdiction over HBO because one of its subsidiaries, HBO Home Entertainment, Inc., is registered as a foreign corporation in Missouri.  Resp. at 2.  He further suggests that the other Defendants are subject to personal jurisdiction because they allegedly engaged in a conspiracy with HBO.  *Id.*  These arguments miss the mark for several reasons.

First, Mr. Elliot offers no reason, nor could he, to disregard the corporate form and attribute the jurisdictional contacts of a subsidiary to HBO.  *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 650 (8th Cir. 2003) ("[T]he general rule is that a parent corporation that owns a subsidiary—even wholly owns a subsidiary—is not present in a state merely because the subsidiary is there.").  Second, a business that registers as a foreign corporation does not automatically consent to personal jurisdiction in Missouri.  *See State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 52 (Mo. 2017) (en banc) ("The plain language of Missouri's registration statutes does not mention consent to personal jurisdiction for unrelated claims, nor does it

---

[1]  Defendants filed and served their motion on January 12, 2024.  Dkt. 31.  Pursuant to Local Rule 4.01(B), Mr. Elliot's response was due within fourteen days, or January 26.  He did not file his opposition until February 9.  Dkt. 34.  At no time did Mr. Elliot request an extension of time to respond to the motion, nor did he offer any excuse for his failure to meet the deadline.  *See* Fed. R. Civ. P. 6(b)(1)(B); *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) ("Even pro se litigants must comply with court rules and directives.").

2

purport to provide an independent basis for jurisdiction over foreign corporations that register in Missouri."). Finally, "courts must have an independent basis for jurisdiction over each defendant individually," even for a conspiracy claim. *Jean-Gilles v. Gilles*, 2014 U.S. Dist. LEXIS 166349, at *14 (E.D. Mo. Dec. 1, 2014); *see also Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 912 n.1 (W.D. Mo. 2010) ("While many cases establish that a party can be liable for a co-conspirator's actions, it does not appear that Missouri law imposes personal jurisdiction on a party based solely on a co-conspirator's actions.").

Because Mr. Elliot is unable to show that Defendants could "reasonably anticipate being haled into court" in Missouri as a result of their contacts with the state, *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022), this case should be dismissed or transferred for lack of personal jurisdiction.

## II.     Mr. Elliot has not established that venue is proper.

Defendants explained in their opening brief that venue in this District is improper because none of them are residents of Missouri and none of the alleged conduct took place in Missouri. Br. at 11-12. In the alternative, Defendants argued that this action should be transferred to the Southern District of New York for the convenience of parties and witnesses. *Id.* at 12-14. Mr. Elliot's only response to these arguments is that the forum selection clause of the Agreement he signed to appear in *The Vow* "is not binding on jurisdiction of this action." Resp. at 4. But the Agreement is just one consideration in assessing the relative convenience of the parties for purposes of the *forum non conveniens* statute, 28 U.S.C. § 1404(a), and the forum selection clause indicates that Mr. Elliot did not consider New York to be an inconvenient forum for at least some claims he might bring in connection with *The Vow*. *See* Br. at 12-14 (addressing multiple convenience and fairness factors weighing in favor of transfer).

At any rate, Section 1404(a) and the forum selection clause only come into play if the Court concludes that venue is proper in the first place, Br. at 11-12, and Mr. Elliot has made no effort to address this point at all.  *See Allen v. At Home Stores, Inc.*, 2023 U.S. Dist. LEXIS 125817, at *3 (W.D. Mo. July 21, 2023) (holding that pro se plaintiff had conceded argument by failing to respond to it in opposition to motion to dismiss).  Thus, to the extent the Court does not dismiss or transfer the case for lack of personal jurisdiction, it should do so on venue grounds. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum.").

**III.    The Complaint fails to state a claim as a matter of law.**

As set forth in Defendants' opening brief, (1) the Agreement Mr. Elliot signed to appear in *The Vow* released **all** claims relating to the series, (2) the Agreement also gave Defendants permission to use his name and voice, and (3) regardless of the Agreement, such use is exempt from liability as protected expression.  Br. at 15-19.  Mr. Elliot has not meaningfully addressed any of these arguments in his opposition.

The main thrust of Mr. Elliot's response is that he was not aware his call with Ms. Constantino had been recorded or that it might be used in a documentary, Resp. at 3-4, but his lack of awareness simply has no bearing on Defendants' liability.  The initial recording of Mr. Elliot's voice was entirely lawful:  Mr. Elliot concedes that New York law permits a conversation to be recorded with the consent of only one of its participants, Compl. ¶ 43; Br. at 20, and that Ms. Constantino provided her consent to the camera crew present during the call, Compl. ¶ 46.  Therefore, to the extent Mr. Elliot's claims are based on the act of recording the call without his knowledge, they are not actionable.

4

Nor does Mr. Elliot state a claim based on the subsequent use of the recording in *The Vow*. The Agreement between Mr. Elliot and *The Vow*'s producers did not include any promise that the series would not include footage obtained from other sources. *See* Compl. Ex. 1. Indeed, Mr. Elliot confirmed in the Agreement that he had no "right of inspection or approval" of the series and was "not basing [his] consent and release on any information or statements" outside of the contract. *Id.*; *see, e.g.*, *Krupnik v. NBC Universal, Inc.*, 2010 N.Y. Misc. LEXIS 6785, at *12 (N.Y. Sup. Ct. June 10, 2010) (dismissing right of publicity claim where "plaintiff waived her right to object to the material with which her photo might be juxtaposed"). More importantly, and contrary to Mr. Elliot's assertion, Resp. at 4, Defendants were not obligated to obtain permission from him at all. As one court put it,

> Producers of films and television programs may enter into agreements with individuals portrayed in those works for a variety of reasons, including access to the person's recollections or "story" the producers would not otherwise have, or a desire to avoid litigation for a reasonable fee. But the First Amendment simply does not require such acquisition agreements.

*De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 861 (2018).

Furthermore, courts routinely reject right of publicity claims arising from expressive works that incorporate images and recordings made without the plaintiff's knowledge. *See, e.g.*, *Candelaria v. Spurlock*, 2008 U.S. Dist. LEXIS 51595, at *3-16 (E.D.N.Y. July 3, 2008) (dismissal of Section 51 claim based on documentary filmmaker's use of video obtained by hidden camera); *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 700, 704 (N.Y. 1993) (dismissal of Section 51 claim based on newspaper's use of photo obtained by trespassing); *Arrington v. N.Y. Times Co.*, 434 N.E.2d 1319, 1320-23 (N.Y. 1982) (dismissal of Section 51 claim based on newspaper's use of photo where plaintiff "had no prior knowledge that the photograph had been

5

taken, much less that it would be sold or published or that it would be used in connection with this or any other article"). Mr. Elliot's right of publicity claim is no different.[2] Br. at 20.

Lastly, Mr. Elliot is mistaken in his argument that the release provision in the Agreement is limited to the use of footage obtained after July 11, 2020. *See* Resp. at 3 ("Had the waiver been effective for all time, there would have been no start date listed, but an all-encompassing phrase such as 'from the beginning of time.'"). As Defendants noted in their opening brief, the release provision is broader than the grant of rights that appears elsewhere in the Agreement. Br. at 15-16. The release unambiguously prohibits Mr. Elliot from making "any claim of any nature against the Producer or any third party relating to the Documentary Series and your filming of me," Compl. Ex. 1, without reference to a specific timeframe or specific footage. Br. at 15-16. Accordingly, even if Mr. Elliot's right of publicity and conspiracy claims were otherwise viable—which, as already demonstrated, they are not—the Complaint would nonetheless fail to state a claim.

## CONCLUSION

For the foregoing reasons, and those stated in their opening brief, Defendants respectfully request that their motion be granted and that this case be dismissed or transferred to the Southern District of New York for lack of personal jurisdiction or, in the alternative, for improper venue. If the Court holds that it may exercise jurisdiction and that venue here is proper, Defendants respectfully request that the Complaint be dismissed with prejudice for failure to state a claim.

---

[2] Mr. Elliot also emphasizes that *The Vow* was distributed "on a subscription only platform." Resp. at 3. As Defendants explained in their opening brief, expressive works are exempt from the right of publicity whether or not they are made for profit. Br. at 19. If the law were otherwise, newspapers like the *St. Louis Post-Dispatch*, which also operate on a subscription basis, would be exposed to right of publicity claims whenever they reported on individuals without their permission.

Dated: February 20, 2024	Respectfully submitted,

BALLARD SPAHR LLP

By:	*/s/ Elizabeth Seidlin-Bernstein*
Elizabeth Seidlin-Bernstein (*pro hac vice*)
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
seidline@ballardspahr.com

LEWIS RICE LLC
Joseph E. Martineau (#32397MO)
Kolten C. Ellis (#74451MO)
600 Washington Avenue, Suite 2500
St. Louis, MO 63101
Telephone: 314.444.7600
Facsimile: 314.612.2042
jmartineau@lewisrice.com
kellis@lewisrice.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of February, 2024, a copy of the foregoing Reply in Further Support of Defendants' Motion to Dismiss or Transfer was filed electronically. Notice of this filing will be sent via the Court's electronic filing system to all counsel of record and to the party listed below:

Marc Elliot
5655 Pershing Ave, Apt. 529
St. Louis, MO 63112
Telephone: (314) 252-0579
marc@marcelliot.com

*Plaintiff, pro se*

	*/s/ Elizabeth Seidlin-Bernstein*